## UNITED STATES v. ONE BUICK SEDAN AUTOMOBILE (HOWARD AUTOMOBILE CO. OF LOS ANGELES, Intervener).

(District Court. S. D. California, S. D. October 4, 1924.)

No. 1405.

1. **Internal revenue** ⚖══45—"Removed," as used in Rev. St. § 3450, defined; "transported."

The word "removed," in Rev. St. § 3450 (Comp. St. § 6352), providing for forfeiture of vehicles used, when goods subject to tax are removed with intent to defraud the United States of the tax, means a removal from some definite place of manufacture or storage to some other place, and does not mean the same as "transported," as used in Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), which means carried or taken from one place to another.

[Ed. Note.—For other definitions. see Words and Phrases, First and Second Series, Remove—Removal; Transport—Transportation.]

2. **Intoxicating liquors** ⚖══245—Provisions of internal revenue law for forfeiture of vehicles not applicable to mere illegal transportation of liquor.

The provisions of Rev. St. § 3450 (Comp. St. § 6352), for forfeiture of vehicles used in removal of articles with intent to defraud the United States of the tax due thereon, cannot be applied to the mere transportation of liquor in violation of the Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), unless the circumstances warrant a fair and reasonable inference that there was also an intent to defraud the government of a tax payable thereon.

Libel for Forfeiture. Proceeding by the United States against one Buick sedan automobile, motor No. 951-043, with the Howard Automobile Company of Los Angeles as intervening claimant. Libel dismissed.

Joseph C. Burke, U. S. Atty., and J. E. Simpson and R. B. Camarillo, Asst. U. S. Attys., all of Los Angeles, Cal.

Joseph Musgrove and F. O. McGirr, both of Los Angeles, Cal., for claimant.

McCORMICK, District Judge. On December 21, 1921, the Howard Automobile Company of Los Angeles, Cal., entered into a written conditional sale contract, whereby it delivered and agreed to sell to Nick Pappas one Buick sedan automobile for the sum of $2,933.73. The contract contained the usual terms, conditions, and covenants found in agreements of conditional lease and sale of personal property, wherein title to the automobile was reserved and retained in the Howard Automobile Company until all of the purchase price was fully paid and all of the terms of the contract had been strictly kept and performed. The purchase price was made payable as follows: Seven hundred dollars was paid at the time of the execution of the contract, when the automobile was delivered into the possession of Pappas, and the balance was to be paid in successive monthly installments until entirely paid. Upon the payment of the purchase price and compliance with and fulfillment of all other provisions of the contract, the Howard Automobile Company agreed to transfer the title to the automobile and to deliver a bill of sale thereof. The contract contained a provision as follows: "It is distinctly understood and agreed that during the

term of this lease the automobile shall not be used for the transportation of intoxicating liquors, drugs, or narcotics, nor shall same be used in or about the violation of any United States, state, or municipal statute, law, or ordinance."

Pappas made the initial payment and three monthly payments thereafter, in accordance with the contract, so that on May 29, 1923, there was a balance due of $1,747.-90, with interest as provided in the agreement. No further or additional payments have been made. On May 29, 1923, Pappas was using and operating the above automobile on a public street in Los Angeles, Cal.; his exact location, or his destination, or from whence he came, not being disclosed by the pleadings or by any evidence herein. He had concealed within said automobile and was transporting therein and thereby 18 pints of distilled spirits known as "moonshine" whisky, an intoxicating liquor used for beverage purposes. It is not made to appear by the record herein where the liquor was manufactured, and there is no evidence whatever as to whether the containers of the liquor bore any labels, marks or inscriptions indicating where manufactured, or from whence transmitted, or concerning the kind of liquor contained therein. It is conceded that Pappas, at the time he was so transporting said liquor as aforesaid, was violating the National Prohibition Law by the unlawful possession and transportation of intoxicating liquor. It also appears that the automobile at such time was being used as a conveyance and instrumentality whereby the National Prohibition Law was being violated. It is further conceded that taxes which were due to the government on said liquor had not been paid.

The automobile was seized by the federal prohibition officers. Pappas was taken into custody by said officers, and he was thereafter prosecuted, convicted, and punished for the violation of the National Prohibition Law. Subsequent thereto the government filed in this court a libel against said automobile, not under the provisions of the National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), but under section 3450 of the Revised Statutes of the United States (Comp. St. § 6352), and the government seeks by such libel to have this court adjudge that the automobile be condemned and forfeited to the government under said section 3450, on the ground that it was engaged in the removal and concealment of intoxicating liquor with intent to defraud the United States of the internal revenue tax, as denounced by said section 3450 of the Revised Statutes. The government asks that the rights and interests of all parties in said automobile, whether such parties be innocent of the use or have knowledge of the use of said automobile, or otherwise, be terminated, canceled, and confiscated, that said automobile be sold by the government, and that the proceeds from such sale be paid into the public treasury.

The Howard Automobile Company has intervened, and has asserted its interest and ownership of said automobile under the aforesaid conditional lease and sale contract, and asks that forfeiture of the automobile under said section 3450 of the Revised Statutes of the United States be denied. There was no testimony introduced by either the government or the intervener at the time of the hearing hereof; it being stipulated that the libel would be submitted upon the pleadings herein, and upon briefs which have been duly filed herein.

It appears and it is conceded that all interest of Pappas in said automobile is forfeited to the government under any view of this case. It is also agreed that the intervener was and is innocent of any complicity whatsoever with Pappas in the violation of the National Prohibition Law, or of any other law, or in the use of said automobile for any criminal or unlawful purpose. As before stated there is no showing whatever that the automobile, when seized, was being used in the transportation of liquor from without the United States, or from a place where the liquor had been manufactured or from a distillery, brewery, winery, or rectifier's establishment. The question for decision in this case is whether the automobile under this statement of facts is subject to forfeiture under section 3450 of the Revised Statutes of the United States.

Section 3450 is one of the longest standing provisions of the internal revenue laws, having been enacted July 13, 1866 (14 Stat. 98), and it substantially provides that "whenever any goods or commodities for or in respect whereof any tax is or shall be imposed are *removed* or are deposited or concealed * * * with intent to defraud the United States * * * all such goods and commodities respectively and every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals and all things used in the removal or for the deposit or concealment thereof shall be forfeited."

In all of the decisions wherein forfeiture under section 3450 has been decreed, it has

been uniformly held that the property is subject to forfeiture, although the owner was a nonparticipant in the unlawful use of his vehicle and did not share in the guilt of the user of it. U. S. v. Mincey, 254 F. 287, 165 C. C. A. 575, 5 A. L. R. 211; U. S. v. One Cadillac Automobile (D. C.) 292 F. 773. So that it is now established law that, whenever and wherever a forfeiture falls within the terms and meaning of section 3450, the government is entitled to the automobile as against the owner and all lienholders, irrespective of lack of knowledge upon the part of the owner or lienholder that the law was being violated.

Now it is to be noted in this connection that the National Prohibition Law (41 Stat. 305), and particularly section 26 thereof, provides a complete method for the forfeiture of vehicles used to unlawfully transport intoxicating liquor in violation of the prohibition laws, and the act contains a beneficent safeguard against the confiscation of the property of innocent owners of lienholders by providing that a vehicle used to unlawfully transport intoxicating liquor shall upon conviction of the person so using it be forfeited *unless good cause to the contrary is shown by the owner.* It is likewise noteworthy that, when section 3450 was enacted, conditional lease and sale contracts such as that involved in this case were not so generally used in business as to-day, and were not the important and extensive mediums of commerce that they are now, and that they were when the National Prohibition Law was enacted. It would therefore seem proper to assume that the salutary provisions of section 26 of the National Prohibition Law were intended by Congress to apply to the forfeiture of automobiles in aid of the enforcement of national prohibition, where such was the real purpose of the proceeding, rather than by the invocation of the ancient, drastic, and strict tax enforcement law of section 3450, Revised Statutes.

When section 3450 of the Revised Statutes became law, national prohibition did not exist. The very purpose of the old internal revenue law was to provide internal revenue taxes for the support of the government, and to provide for the enforcement of the payment of such taxes by certain penal provisions and forfeitures. It was 50 years later that the Eighteenth Amendment to the Constitution was adopted. This observation is pertinent, because in a consideration and determination of the scope of an act of Congress it is often important to determine the legislative intent actuating the law-making power. It is a long stretch of the imagination, and one that does violence to reasoning, to conclude that the Congress in 1866 had in mind, in enacting section 3450 of the Revised Statutes, that it would aid or should aid in the enforcement of the National Prohibition Law of 1919; and therefore, unless it clearly and unequivocally appears that the language of the statute itself, or of a supplemental act later discussed herein, unaided by a forced or strained construction, fits and applies to existing conditions and circumstances, it should not be invoked or applied to supplant or act as a substitute for provisions of the National Prohibition Law.

But, of course, if section 3450 of the Revised Statutes is applicable to the facts of this case, it must be applied hereto, notwithstanding its harshness, and although there may be another and even a more appropriate remedy. The argument of the government is that the automobile was being used simultaneously for a twofold purpose, viz. to violate the National Prohibition Law by the unlawful transportation of liquor thereby, and also to violate the internal revenue laws by removing liquor without paying the taxes due thereon, with the intent to defraud the United States of such taxes. But I think it must be conceded that under the showing made in this case the primary, paramount, and perhaps the sole purpose and intent of the user of the automobile was to unlawfully transport the liquor, so as to evade and defeat national prohibition, and that the intent to defraud the government of the internal revenue tax, if such intent were ever present in the mind of the user of the automobile, was subordinate and merely incidental, and present only constructively. It is extremely doubtful whether the legal doctrine of constructive intent can be applied to the case at bar. The automobile, which it must be constantly remembered is the subject-matter of this action, was used only to commit an act not malum in se, but merely malum prohibitum. The doctrine of constructive intent might be applicable to the person who used the vehicle but hardly to the automobile itself.

The Circuit Court of Appeals of this the Ninth Federal Circuit has decided that in so far as it is provided by section 3450, supra, for the forfeiture of automobiles used to transport liquor upon which the tax has not been paid, the section has been repealed by the provisions of the National Prohibition Law. McDowell v. U. S. (C. C. A.) 286 F.

521. See, also, U. S. v. Yuginovich, 256 U. S. 450, 41 S. Ct. 551, 65 L. Ed. 1043. If the present state of the law were the same as when the McDowell Case was decided, our inquiry in the case at bar would terminate without further consideration, for I regard a decision of the Circuit Court of Appeals, and especially of the Ninth Circuit, as absolutely binding and controlling on this court until reversed or modified by the Supreme Court of the United States. No such action has been taken as to the question decided in the McDowell Case.

We find, however, that in 1921 Congress passed a law supplemental to the National Prohibition Act, and known as the Willis-Campbell Act. 42 Stat. 222. The portion of such act that is pertinent to our inquiry is section 5 thereof, which reads as follows: "All laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and all penalties for violations of such laws that were in force when the National Prohibition Act was enacted, shall be and continue in force, as to both beverage and non-beverage liquor, except such provisions of such laws as are directly in conflict with any provision of the National Prohibition Act or of this act." Section 5, Act Nov. 23, 1921, 42 Stat. 222 (Comp. St. Ann. Supp. 1923, § 10138⁴/₅c).

It is contended by the government that, even though the National Prohibition Law did repeal section 3450 of the Revised Statutes, as held in the McDowell Case, supra, Congress by the supplementary act aforesaid in effect re-enacted section 3450, and revived it so as to affect conduct subsequent to its re-enactment. This contention is undoubtedly sound; in fact, it has been so held by the Supreme Court of the United States in U. S. v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358.

But all that was done by the Congress in passing the Willis-Campbell Act was to evince an intention to overcome the effect of decisions such as the McDowell Case. In effect, section 3450 was re-enacted, so that it remains now as it existed before the Volstead Act. Its purposes have not been changed. It is applicable and enforceable in the same manner and to the same extent as it was before being rendered ineffectual by the National Prohibition Law. It cannot now be given new and enlarged functions, unless such are justified by its terms.

[1] The application of section 3450 to the facts of this case is to be determined by a consideration of the meaning of the word "removed," as used in said section; for, if the meaning of "removed," as therein used, is identical with the meaning of the word "transport," as used in the National Prohibition Law, then said section 3450 must be applied to the facts of this case, and absolute forfeiture decreed herein.

Attention has already been directed to the apparent legislative intent of Congress in the enactment of section 3450, and it will be further disclosed, upon examination of this old revenue law, that section 3450 is found in said law contiguous to and correlated with other sections of said law, which concerned and related to the collection of internal revenue taxes upon cotton, tobacco, and distilled spirits produced or manufactured within the United States, and all of these correlated and contiguous sections refer to the place of production or manufacture as being the places wherefrom or wherein the taxes are to be assessed and collected.

It is apparent to me that, when Congress used the word "removed" therein, it necessarily used such term exclusively in relation to removal of taxable commodities from their places of production or manufacture, especially with respect to such commodities as were produced or manufactured within the United States. Most if not all of the provisions of said Internal Revenue Act of 1866, wherein the collection of taxes due thereon are referred to, relate to distilleries, breweries, manufacturers of wine, etc. I think it plain that Congress intended the word "removed," in section 3450, as applied to such places and to such persons who used vehicles or conveyances, and thereby carried or removed taxable commodities therefrom with intent to defraud the United States of the taxes due thereon, and that the term "removed" therein is not identical with the term "transport," as used in the National Prohibition Law, which term as therein used applies to all persons and conveyances generally.

The term "transport," as used in the National Prohibition Law, is broader, more comprehensive, more inclusive, than the term "removed," as the latter word is employed in section 3450. Intoxicating liquor is "transported," within the meaning of the National Prohibition Law, when it is carried or taken from one place to another; but intoxicating liquor is "removed," within the meaning of section 3450, when it is carried or taken from a place of the kind that was in the mind of the lawmakers at the time of the enactment. It is as well recognized in statutory construction and interpretation as it is in etymology that very many

words depend more or less upon their context or the circumstances of their use for a part of the sense or meaning which they are intended to convey. In U. S. v. Mangano, 299 F. 492, decided May 6, 1924, the Circuit Court of Appeals held that the use of the word "removed" in section 3450 had reference to the transfer from particular specified places designated in the law, and my esteemed colleague, Judge Bledsoe, in an opinion filed in this court on July 22, 1924, in U. S. v. One Buick Automobile Engine No. 988-235, etc., 300 F. 58 ½, has ably discussed and analyzed the difference between the meaning of the word "transport" as used in the National Prohibition Law and the word "removed" as found in section 3450 of the Revised Statutes.

[2] This case is readily distinguished from a situation where the evidence proves that the liquor has been smuggled and conveyed into the United States in violation of tariff laws, although even in such cases the quantity and kind of liquor, as well as the appearance of the containers, furnish a criterion as to whether the intent to defraud the United States of duties or taxes is established. The inference of the existence of the necessary intent to bring the act within section 3450 must be reasonable and fair. If there is direct evidence that liquor upon which the taxes have not been paid is being carried from a place designated in the internal revenue law of 1866, then the conveyance is subject to absolute forfeiture thereunder. If the government seeks forfeiture, as in this case, from circumstantial evidence, then it is incumbent upon it to produce facts and circumstances which warrant a fair and reasonable inference that the vehicle was removing liquor from a place designated in the internal revenue law of 1866 with intent to defraud the United States of the taxes due thereon.

As the evidence in this case certainly fails to establish that liquor was removed by the automobile from such a place, the libel should be dismissed, and the automobile delivered to intervener upon payment of storage.